Michael Levine, Esq.
**LEVINE & ASSOCIATES, P.C.**
15 Barclay Road
Scarsdale, NY 10583
Telephone (914) 600-45288
*Attorneys for Defendants except Arnov Industries*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| YESHIVA CHOFETZ CHAIM INC., RABBI MAYER ZAKS, derivatively on behalf of YESHIVA CHOFETZ CHAIM INC., SIMA WEINTRAUB, derivatively on behalf of YESHIVA CHOFETZ CHAIM INC., SOLOMON STEIN, derivatively on behalf of YESHIVA CHOFETZ CHAIM INC., RONALD SMITH, derivatively on behalf of YESHIVA CHOFETZ CHAIM INC., and 82 HIGHVIEW LLC, | : Docket No. 21-cv-6054 <br><br> : <br><br> : <br><br> : **NOTICE OF REMOVAL** <br><br> : |

                        **Plaintiffs,**       :

           - against -           :

YESHIVA CHOFETZ CHAIM INC., ARNAV INDUSTRIES   :
INC. PROFIT SHARING PLAN AND TRUST, ARYEH
ZAKS, BEATRICE WALDMAN ZAKS, HENOCH ZAKS    :
and GITTEL LAYOSH ZAKS,

                         :

                      **Defendants.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## NOTICE OF REMOVAL

      Pursuant to 28 U.S.C. §§ 157, 1334, 1441, 1446 and 1452 and Rule 9027 of the Federal

Rules of Bankruptcy Procedure, Defendants Yeshiva Chofetz Chaim Inc., Rabbi Aryeh Zaks,

Beatrice Waldman Zaks, Henoch Zaks and Gittel Layosh Zaks, by and through their attorneys,

**Levine & Associates, P.C.**, hereby gives notice of the removal to the United States District Court

for the Southern District of New York, for referral to the United States Bankruptcy Court for the

Southern District of New York (the "Bankruptcy Court") of all claims and causes of action asserted

in an action pending in the Supreme Court of the State of New York, County of Rockland, under

Index No. 036178/2019, entitled Yeshiva Chofetz Chaim Inc., Rabbi Mayer Zaks, derivatively on behalf of Yeshiva Chofetz Chaim Inc., Sima Weintraub, derivatively on behalf of Yeshiva Chofetz Chaim Inc., Solomon Stein, derivatively on behalf of Yeshiva Chofetz Chaim Inc., Ronald Smith, derivatively on behalf of Yeshiva Chofetz Chaim Inc., and 82 Highview LLC, *Plaintiffs, against Yeshiva Chofetz Chaim Inc., 82 Highview LLC, Arnav Industries Inc. Profit Sharing Plan and Trust, Aryeh Zaks, Beatrice Waldman Zaks and Henoch Zaks, Defendants* [the " Yeshiva Action"].

In support of its Notice of Removal, Mosdos respectfully sets forth as follows:

## I.    The Background

1.   On or about December 20, 2005, Mosdos Chofetz Chaim Inc. ("Mosdos") took out a loan from Citizen's Bank in the amount of $12.8 million (the "First Mortgage") for the purpose of improving certain real property that it owned located at 1-60 Kiryas Radin Drive, New Hempstead, New York, more commonly referred to as 50 Grandview Avenue (the "CRDI Property") and pledged the CRDI Property as collateral for the repayment of the same, which mortgage was recorded on December 27, 2005. Some years later, in February of 2007, Mosdos took out another loan in the amount of $203,000 from CC of R LLC ("CC of R"), a New Jersey limited liability company, and granted to that entity a second mortgage to the CRDI Property (which was recorded on March 7, 2008). The entire principal balance of the same, together with accrued interest, was due on September 1, 2008.

2.   On April 18, 2011, Avon Group Limited Liability Company ("Avon"), a New Jersey limited liability company, purchased the First Mortgage from Citizen's Bank. It also acquired three mechanics liens aggregating $94,402.96.

3.   On February 15, 2012, Avon and CC of R commenced an action in the Supreme Court of the State of New York, Rockland County, under Index No. 030844/2012, seeking to Foreclose

on the First Mortgage (which was then in the amount of $12,767,243, plus interest from September 20, 2007), the CC of R mortgage, and the mechanics liens, and for ancillary relief.

4. On September 6, 2012, Mosdos filed a Chapter 11 Bankruptcy Petition (the "Mosdos Bankruptcy"). On or about June 6, 2013, Avon filed in the Mosdos Bankruptcy (i) a proof of Avon's $16,983,577.00 secured claim based on the Avon Mortgage; and (ii) a proof of Avon's $134,163.50 secured claim based on mechanics liens that it had acquired. On or about June 6, 2013, CC of R filed in the Mosdos Bankruptcy a proof of CC of R's $320,891.00 secured claim based on the CC of R Mortgage.

5. On June 10, 2014, Yeshiva Chofetz Chaim, Inc. filed an action in the United States District Court for the Southern District of New York against Mosdos, captioned *Yeshiva Chofetz Chaim, Inc. v. Mosdos Chofetz Chaim, Inc.*, Docket No. 14 Civ. 4149, seeking to invalidate the 2005 transfer of the CRDI Property to Mosdos for lack of prior Court approval under New York Religious Corporation law § 12(1), and for failure to tender the stated consideration of the $4,000,000 purchase price.

6. Following those protracted litigations, Mosdos negotiated a settlement with Avon and CC of R (as well as the other parties with whom it was embroiled in litigation) dated January 27, 2017 (the "Avon Settlement Agreement"). The same provided, *inter alia*, that the amount owing to Avon and CC of R "exceeds $20 million," that Avon would receive payments totaling $7,290,000 and would (upon receipt of the said sum) assign the Avon Mortgage, the CC of R mortgage and the mechanics liens to an entity to be designated.

7. The Avon Settlement Agreement was signed by both Rabbi Mayer Zaks and Rabbi Aryeh Zaks on behalf of Mosdos, as were releases from Mosdos, Rabbi Mayer Zaks personally, and Rabbi Aryeh Zaks personally to, among others, Avon.[1]

8. On May 19, 2017, Mosdos, Yeshiva Chofetz Chaim, Inc. ("YCC") and TBG Radin LLC entered into a Stipulation (So Ordered by the Bankruptcy Court on June 21, 2017, DE-227),[2] which provided, *inter alia*, that (i) the Assignee under the Avon Settlement Agreement was TBG Radin LLC ("TBG"), (ii) "TBG is a third party not affiliated with and unrelated to YCC, Mosdos or either Rabbi Mayer Zaks or Rabbi Aryeh Zaks," (iii) TGB "shall have a valid first mortgage lien on the Property in the agreed aggregate amount of the Indebtedness, which as of June 6, 2017 is $22,173784.04," and (iv) Mosdos and YCC, as signatories to this Stipulation, shall be deemed to have accepted and ratified the validity and amount of such documents and claims, including the Note, the Mortgage, the Avon Liens, the Avon Claim, the CC of R Note, the CC of R Mortgage, the CC of R Claim, and the Indebtedness" (the "TBG Assignment Stipulation and Order").

9. The TBG Assignment Stipulation and Order was signed by Rabbi Mayer Zaks on behalf of Mosdos and by Rabbi Aryeh Zaks on behalf of YCC.

10. On December 7, 2017, Mosdos moved the Bankruptcy Court for an Order approving an amendment to the Avon Settlement Agreement and First Approval Order [DE-233]. On December 15, 2017, the Bankruptcy Court entered a Supplemental Order approving the amendment

---

[1] The U.S. District Court (Hon. Kenneth M. Karas) approved the settlement agreement on July 7, 2017 (Docket No. 14 cv 4149, DE-119), the Bankruptcy Court (Hon. Robert D. Drain) approved it on June 21, 2017 (Case No. 12-23616, DE-226) (the "First Approval Order"), and the State Court (Hon. Paul I. Marx) approved it on March 19, 2018 (to the extent of permitting a discontinuance of the State Court Action based upon the Settlement Agreement).

[2] Unless otherwise noted, the term "DE-_____" refers to the Docket entries in the Bankruptcy Case, Case No. 12-23616.

(the "Supplemental Approval Order") [DE-236].  The Supplemental Approval Order provided, *inter alia*, that (i) "upon assignment of the Avon Mortgage to TBG Radin LLC (the 'Assignee'), Mosdos and YCC, as signatories to the Stipulation, shall be deemed to consent to approval of the Avon Mortgage, *nunc pro tunc* as of December 20, 2005, and the Avon Mortgage shall be deemed valid in accordance with applicable law, including the provisions of the RCL [New York Religious Corporations Law];" and (ii) "upon assignment of the CC of R Mortgage to the Assignee, Mosdos and YCC, as signatories to the Stipulation, shall be deemed to consent to approval of the CC of R Mortgage, *nunc pro tunc* as of February 28, 2008, and the CC of R Mortgage shall be deemed valid in accordance with applicable law, including the provisions of the RCL."

11.  On July 17, 2019, Mosdos filed a Plan of Reorganization [DE-267]; on August 9, 2019, Mosdos filed an Amended Plan of Reorganization [DE-277]; and on August 16, 2019, Mosdos filed a Second Amended Plan of Reorganization [DE-283].  The Second Amended Plan provided, at §4.3 that:

> [I]n full satisfaction and settlement of the TBG Radin Secured Claim, the Holder of the TBG Radin Secured Claim shall continue to receive payments pursuant to (i) the Note and the Amended and Restated Mortgage by and between Mosdos and TBG Radin LLC as provided for in the June 21 Stipulation, or (ii) such other treatment as may otherwise be agreed to in writing by the Debtor and the Holder of the TBG Radin Secured Claim.  Provided that, in the event the Debtor believes it is unable to make payments to the Holder of the TBG Radin Secured Claim, the Debtor shall be authorized to sell the Property, subject to section 363(d)(1) of the Bankruptcy Code, including New York Attorney General approval under New York Religious Corporations Law, to a qualified religious corporation or not for profit corporation under New York Religious Corporations Law or New York Not for Profit Law, in full and final satisfaction, release and discharge of the Allowed TBG Radin Secured Claim, which is currently $24,755,000. In the event that the Property is sold, the Holder of the TBG Radin Secured Claim shall receive payment on account of the Allowed TBG Radin Secured Claim sufficient to pay the TBG Radin Secured Claim in full or such other amount as agreed to in writing by the Debtor and the Holder of the TBG Radin Secured Claim.

12.  The Second Amended Plan further provided that the $24,755,000 debt to TBG [the "TBG Claim"] would be extinguished via monthly payments of $128,000 for ten years, with a balloon payment in 2028.  It further provided that, if Mosdos believed it was unable to make those payments, it could "sell the Property to a qualified religious corporation or not-for-profit corporation."  Specifically, the Second Amended Plan provided (emphasis added):

> **Implementation**. The Plan shall be implemented by (i) the funding of approximately $900,000.00 to pay all Allowed Claims (other than TBG Radin Secured Claim) and (ii) monthly payments under the Note (in the amount of $125,857) to pay the TBG Radin Secured Claim each month for ten years (with a balloon payment in 2028), *or if the Debtor believes it is unable to make payments to the Holder of the TBG Radin Secured Claim, the sale of the Property to a qualified religious corporation or not-for-profit corporation to pay the TBG Radin Secured Claim. Any such sale shall be subject to any necessary approval under section 363(d)(1) of the Bankruptcy Code, including any such approval by the New York Attorney General under New York Religious Corporations Law.* The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan, including obtaining any such approval. The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property required by the Plan (if necessary) or subsequent court order and to perform any act that is necessary for the consummation of the Plan.

13.  On October 2, 2019, the Bankruptcy Court approved Mosdos' Second Amended Plan of Reorganization (the "Approved Plan") and signed a confirmation order (the "Confirmation Order," DE-308).  As part of the Confirmation Order, among other things, the Bankruptcy Court ordered that Mosdos was "authorized to sell the [CRDI] Property pursuant to and under the Plan … in full and final satisfaction, release and discharge of the [TBG Claim], which is currently $24,755,000".  Specifically, the Confirmation Order provided, at ¶ 22 on page 5:

> The Plan provides for its implementation through (i) the funding of approximately $900,000.00 to pay all Allowed Claims (other than TBG Radin Secured Claim) and (ii) monthly payments under the Note (in the amount of $125,857) to pay the TBG Radin Secured Claim each month for ten years (with a balloon payment in 2028), or if the Debtor believes it is unable to make payments to the Holder of the TBG

Radin Secured Claim, the sale of the Property to a qualified religious corporation or not-for-profit corporation to pay the TBG Radin Secured Claim. Any such sale shall be subject to any necessary approval under section 363(d)(1) of the Bankruptcy Code, including any such approval by the New York Attorney General under New York Religious Corporations Law.

14.  Paragraph 22 of the Confirmation Order and fourth ordering paragraph on page 10 of the Confirmation Order authorized the sale of the CRDI property.  The latter paragraph provided as follows:

> ORDERED, that the Debtor/Reorganized Debtor, a religious corporation, is hereby authorized to sell the Property pursuant to the Plan to any qualified religious corporation or not for profit corporation formed under New York Religious Corporations Law or New York Not for Profit Law, pursuant to section 363(d)(1) of the Bankruptcy Code, and pursuant to the requirements of New York State Religious Corporations Law in Article 2, Section 12 of the Religious Corporations Law, in full and final satisfaction, release and discharge of the Allowed TBG Radin Secured Claim, which is currently $24,755,000. In the event that the Property is sold, the holder of the TBG Radin Secured Claim shall receive payment on account of the Allowed TBG Radin Secured Claim sufficient to pay the TBG Radin Secured Claim in full or such other amount as agreed to in writing by the Debtor and the Holder of the TBG Radin Secured Claim …

15.  Following confirmation of the Plan, TBG assigned the TBG Claim to Shem Olam, LLC ("Shem Olam"), whose sole member is Chofetz Chaim Inc.  That assignment (the "TBG Assignment") was recorded in the Office of the Rockland County Clerk on October 11, 2019.  Shem Olam, as a result, became the holder of the TBG Claim.

16.  On October 25, 2019, Mosdos, pursuant to the above-cited provisions of the Confirmed Plan and the Confirmation Order, sold the CRDI Property to CRDI for a purchase price of $25,700,000.  From that purchase price, $23,700,000 was paid to Shem Olam to discharge the TBG Claim.[3]

---

[3]  The $25,700,000 purchase price was clearly the fair market value of the Property, and no one has contested that issue.  Although not relevant to the instant Removal Notice, Shem Olam (through its parent company, Chofetz Chaim Inc.) used the proceeds it received ($23,700,000) for three categories of expenses.  First, it loaned CRDI the approximate sum of $11.1 million ($10,900,510.00 for the balance of the purchase price of the Property, plus about $160,000 in

17.  Some $15,000,000 of the purchase price was financed through a loan from Sterling National Bank, which was granted a mortgage in that amount on the CRDI Property.

## II.     The State Court Actions

### (A) The First State Court Action

18.  Shortly after Mosdos sold the Property to CRDI and paid off the TBG debt, Rabbi Mayer Zaks commenced, on October 25, 2019, an action in New York State Court, Rockland County, under Index No. 036069/2019, purportedly derivatively on behalf of Mosdos, against Mosdos, TBG Radin LLC and Shem Olam LLC [the "Original State Court Action"].  On January 15, 2020, Mayer filed an amended complaint in that action which sought, *inter alia*, to set aside the transfer by Mosdos of the CRDI Property that the Bankruptcy Court's prior Confirmation Order specifically authorized Mosdos to sell, and to set aside the TBG Mortgage (that the Bankruptcy Court had already approved and fixed the amount of).  On February 67, 2020, Mosdos removed the Original State Court Action to the Federal Court, which then referred the same to the Bankruptcy Court, and the same became Adversary Proceeding No. 20-08949-RDD (the "Original Adversary Proceeding").

19.  After removal of the same, the Adversary Proceeding was thereafter tried and, by way of Order dated April 2, 2021, the Bankruptcy Court dismissed the Adversary Proceeding with prejudice against Mosdos and the derivative Plaintiffs who purportedly commenced the same in

---

ancillary costs paid by CRDI).  Secondly, it loaned $8,623,911.50 to Yeshiva Chofetz Chaim Inc. by way of payment for prior Mosdos and Yeshiva debts that Yeshiva Chofetz Chaim Inc. had paid. Third, the remaining sum of $3,976,088.50 million was put into bank accounts of Chofetz Chaim Inc. for ongoing expenses of operating.  Among the expenditures that are being made from that fund are rental payments of $17,000 per month to CRDI for use of the main building for classes and learning, and $63,750 per month in rental payments for student and resident housing.  Those rental payments are made so as to ease the burden of students and residents.  Both Rabbi Mayer Zaks and Rabbi Aryeh Zaks are beneficiaries of that subsidy, as each has an apartment on the campus, the rent for which is being paid by Chofetz Chaim Inc.

Mosdos' name. Rabbi Mayer Zaks thereafter moved the Bankruptcy Court for a stay of that dismissal order pending appeal, which motion was denied by the Bankruptcy Court. Mayer thereafter appealed from the dismissal Order, which appeal is presently pending in the United States District Court for the Southern District of New York under Docket No. 21-02878-PMH.

20. Rabbi Mayer Zaks thereafter moved the District Court for a temporary restraining order staying the Bankruptcy Court's dismissal order pending appeal, which request was denied by the District Court by way of a Minute Order dated April 13, 2021 and by physically striking from the Order to Show Cause that it issued Mayer's request that "pending the hearing of the request for a Preliminary Injunction, the Appellees are enjoined from interference of any kind with the rights activities (sic) and practices of Appellant Rabbi Zaks and/or Mosdos" (emphasis added). By way of letter dated April 13, 2021, Mayer (through counsel) requested that the District Court "revisit" the application for a temporary restraining Order, which request the District Court did not grant.

### (B) The Second State Court Action

21. The same day, April 13, 2021, Rabbi Mayer Zaks, under the guise of a being commenced by the purported (and unidentified) "Congregants of Mosdos Chofetz Chaim Inc. a/k/a Kiryas Radin" commenced a "new" State Court Action [the "second State Court Action"] and sought the identical relief as was sought in the Original State Court Action, including a declaration under Article 15 of the New York Real Property Actions and Proceedings Law ["RPAPL"] that "Mosdos is the owner of the Property" that CRDI purchased for in excess of $25 million pursuant to Mosdos' Confirmed Plan of Reorganization and the Bankruptcy Court's 2019 Confirmation Order. Indeed, that claim was based upon the allegation that the conveyance was "fraudulent" and "unauthorized" – the exact same claims that the Bankruptcy Court specifically dismissed.

22.   The Second State Court Action was thereafter removed to the United States District Court, referred to the United States Bankruptcy Court, and is presently pending in that Court under Adversary Proceeding No. 21-07023-rdd.

### (C) The Yeshiva Action

23.   The Yeshiva Action was commenced on October 13, 2019, an amended Complaint was filed on January 17, 2020, and a Second Amended Complaint (the "SAC") was filed on June 21, 2021.  The SAC, for the first time, sought to impose a "constructive trust" on "the $12.8 million note wrongfully assigned to Shem Olam, LLC" – even though (i) Shem Olam is *not* a party to the Yeshiva Action, (ii) the note that was assigned from nonparty TBG to nonparty Shem Olam was in the amount of $23,700,000 (not $12.8 million), and (ii) the note was, in any event, paid in full and is now satisfied.

24.   Moreover, the basis for the claims set forth in the SAC are grounded in issues already determined by the Bankruptcy Court adversely to Rabbi Mayer Zaks.  For example, at ¶ 69 of the SAC, it is alleged that "Rabbis Aryeh and Mayer [Zaks] are fiduciaries of both Mosdos and Yeshiva," yet the bankruptcy Court has already determined that Rabbi Mayer Zaks is not a fiduciary of Mosdos because he is not on the Board of Trustees of that entity.  Similarly, at ¶ 81 of the SAC, it is alleged that "Mosdos is intricately related to Yeshiva as one of the Chofetz Chaim entities for which Rabbis Mayer and Aryeh Zaks serve as rabbis, trustees, and administrators," and, at ¶ 84 of the SAC, is it alleged that" Sima [Zaks, Rabbi Mayer Zaks' spouse] and Rabbis Mayer and Aryeh are trustees of Mosdos."  As indicated, the Bankruptcy Court has already

determined that Rabbi Mayer Zaks does *not* act as a trustee or administrator for Mosdos, and it also determined that his wife, Sima Zaks, is not a trustee of Mosdos.[4]

25. Most tellingly, the SAC specifically alleges, at ¶ 88, that "Defendants transferred assets of Yeshiva and Mosdos to themselves without taking the steps required by New York Not for Profit Law." But *that is the __exact__ allegation that was made in the First State Court Action, tried in the Bankruptcy Court, and dismissed with prejudice against Rabbi Mayer Zaks*. The Yeshiva Action is nothing more than yet a *fourth* attempt by Rabbi Mayer Zaks to relitigate the issues he has already lost. Similarly, at ¶ 115 of the Complaint, it is alleged that "the defendants have been unjustly enriched at the expense of Yeshiva *and Mosdos*. Again, at least insofar as Mosdos (which Rabbi Mayer Zaks now claims was "one and the same" as Yeshiva) is concerned, that is an issue that Rabbi Mayer Zaks lost after the trial in the Bankruptcy Court.

## BASIS FOR REMOVAL

26. The claims in the New State Court Action are removable to the District Court pursuant to 28 U.S.C. § 1452(a) and Rule 9027 of the Bankruptcy Rules.

27. The District Court has jurisdiction over the claims in the Yeshiva Action pursuant to 28 U.S.C. §§ 1334(b) and 1452(a) because they arise in and/or are related to the Mosdos Chapter 11 bankruptcy case pending in the Bankruptcy Court, captioned *In re Mosdos Chofetz Chaim, Inc.* (Case No. 12-23616). The claims and causes of action in the Yeshiva Action represent a direct

---

[4] Similarly, at ¶ 83 of the SAC, it is alleged that Yeshiva and Mosdos "were and continue to be closely related in both identity, purpose and interest that they should be treated as one and the same." The allegation that Mosdos and Yeshiva are "intricately related" and should be treated as "one and the same" are another reason why this matter belongs in the Bankruptcy Court where Mosdos is a post-confirmation debtor.

attack on the Confirmation Order and other Orders of the Bankruptcy Court, and the resolution of

the Yeshiva Action necessarily impact Mosdos' Chapter 11 case.[5]

28.   Removal is timely here because § 1446(b)(1) provides that the "notice of removal of a

civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through

service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which

---

[5]  Section 1334(b) provides that a district court (and hence the bankruptcy court by referral under 28 U.S.C. § 157(a)) has jurisdiction over proceedings arising under Title 11, proceedings arising in a case under title 11, and proceedings related to a case under title 11. 28 U.S.C. § 1334(b)." "Related to" jurisdiction is a broad grant of federal jurisdiction, case law is divided whether, after confirmation of a chapter 11 plan, a "conceivable effect" test or the "close nexus" test applies. Where the debtor has been reorganized, the "close nexus" test applies. That test has two requirements: "First the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute."  The "close nexus" test applies post-confirmation in reorganization cases because "it is assumed the reorganized debtor is becoming self-sufficient, and no longer needs umbrella protection from the bankruptcy court. Additionally, there is no estate, as property reverts to the reorganized debtor."  See discussion by Judge Glenn in *Black Diamond Commercial Finance, LLC v. Virginia Conservation Legacy Fuels, LLC*, Adv. Proc. No. 15-01409.  In *Lehman Bros. Holdings Inc. v. 1st Advantage Mortg., LLC (In re Lehman Bros. Holdings Inc.)*, 2018 Bankr. LEXIS 2406, the Court stated that:

> Although section 1334 does not distinguish between pre-confirmation and post-confirmation jurisdiction, certain courts have rejected the "conceivable effects" test of "related to" jurisdiction in the post-confirmation stage, instead espousing a more stringent standard referred to as the "close nexus" test. *See Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 73-74 (Bankr. S.D.N.Y. 2005) (citing *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 166-67 (3d Cir. 2004)). Pursuant to the "close nexus" test, a party must demonstrate that a "close nexus" exists between the action and a confirmed plan or bankruptcy proceeding—rather than just a "conceivable effect" – by demonstrating that (i) the "matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement;" and (ii) the plan provides for the retention of jurisdiction over the matter. Id. at 73-74 (citations omitted).

Here, even if the "close nexus" test applies, the outcome of the New State Court Action clearly affects the interpretation, implementation, consummation, or administration of the confirmed Plan. Additionally, the Plan includes a broad retention of jurisdiction provision that covers this dispute.

such action or proceeding is based. ..." Here, the SAC (which is the first pleading containing the constructive trust claim) was filed on June 21, 2021. Thus, the instant removal petition is timely.

29. The new claims and causes of action in SAC the Yeshiva Action can be heard and determined in the Bankruptcy Court on reference from the District Court pursuant to 28 U.S.C. § 157(a) and the January 31, 2012 Amended Standing Order of Reference issued by the District Court for the Southern District of New York (Preska, Chief Judge) because the State Court Action arises in and/or is related to Mosdos' Chapter 11 case and the Bankruptcy Court derives its jurisdiction from the District Court.

30. Removal of the claims in the Yeshiva Action and referral to the Bankruptcy Court best facilitates Mosdos' goals of efficiency and timely administering its affairs and assets through the Chapter 11 case, where they have been administered since 2012.

31. Upon removal, the claims asserted in the Yeshiva Action are core proceedings within the meaning of 28 U.S.C. § 157(b)(2) because they concern the administration of the Restructured Debtor's Chapter 11 case, including but not limited to, the interpretation and enforcement of the Confirmation Order and subsequent Orders.

32. In the event that any of the claims in the Yeshiva Action are determined to be non-core, Mosdos consents to the entry of a final order or judgment by the Bankruptcy Court.

33. Pursuant to the requirements of Rule 9027, a copy of the Second Amended Complaint filed in the Yeshiva Action are attached hereto as Exhibit "1".

34. In accordance with Rule 9027, Mosdos will serve a file copy of the Notice of Removal on all parties to the Yeshiva Action, as well as the Clerk of the Supreme Court of the State of New York, Rockland County, and the Clerk of the Bankruptcy Court.

**NOW THEREFORE**, the parties to the Yeshiva Action are **HEREBY NOTIFIED** pursuant to Rule 9027(c), that:

A. Removal of all claims and causes of action in the Yeshiva Action was effected upon the filing of a copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York, Rockland County.

B. The claims and causes of action in the Yeshiva Action are removed from the Supreme Court of the State of New York, Rockland County, to the United States District Court for the Southern District of New York and, pursuant to 28 U.S.C. § 1452(a) and the Amended Standing Order of Referral, are referred to the United States Bankruptcy Court for the Southern District of New York for hearing and determination in connection with the Debtor's pending Chapter 11 case, captioned *In re Mosdos Chofetz Chaim, Inc.* (Case No. 12-23616) (RDD).

C. The parties to the State Court Action shall proceed no further in the Supreme Court of the State of New York, Rockland County unless and until the action is remanded by the Bankruptcy Court.

Dated: July 14, 2021
       Edgemont, New York

LEVINE & ASSOCIATES, P.C.

By: _____
       Michael Levine

15 Barclay Road
Scarsdale, NY 10583
Telephone (914) 600-4288
Facsimile (914) 725-4778
e-mail: ml@LevLaw.org

*Attorneys for all Defendants except*
*Arnov Industries*

# EXHIBIT 1

FILED: ROCKLAND COUNTY CLERK 06/21/2021 04:46 PM
NYSCEF DOC. NO. 68

INDEX NO. 036178/2019
RECEIVED NYSCEF: 06/21/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

----------------------------------------------------------------x

YESHIVA CHOFETZ CHAIM INC., RABBI MAYER ZAKS,
derivatively on behalf of YESHIVA CHOFETZ CHAIM INC.,
SIMA WEINTRAUB, derivatively on behalf of YESHIVA
CHOFETZ CHAIM INC., SOLOMON STEIN, derivatively on
behalf of YESHIVA CHOFETZ CHAIM INC., RONALD
SMITH derivatively on behalf of YESHIVA CHOFETZ
CHAIM INC., and 82 HIGHVIEW LLC,

Index No.: 036178/2019

**SECOND VERIFIED
AMENDED COMPLAINT**

Plaintiffs

-against-

YESHIVA CHOFETZ CHAIM INC., ARNAV INDUSTRIES
INC. PROFIT SHARING PLAN AND TRUST, ARYEH
ZAKS, BEATRICE WALDMAN ZAKS, HENOCH ZAKS,
ABRAHAM G. ZAKS, and GITTEL LAYOSH ZAKS,

Defendants.

----------------------------------------------------------------x

Plaintiffs Yeshiva Chofetz Chaim Inc. ("Yeshiva"), Rabbi Mayer Zaks, derivatively on

behalf of Yeshiva, Sima Weintraub, derivatively on behalf of Yeshiva, Solomon Stein,

derivatively on behalf of Yeshiva, and Ronald Smith, derivatively on behalf of Yeshiva

(collectively, "Plaintiffs"), by and through their attorneys, Savad Churgin, hereby file this

Second Verified Amended Complaint, and in support thereof, respectfully allege as follows:

1.        This is an action for breach of fiduciary duty, fraudulent concealment, violation of

N.Y. Not-for-Profit Corp. Law , declaration of a constructive trust, declaration that the purported

September 1, 2016 election of officers and trustees was invalid and for a permanent injunction

against Yeshiva Aryeh Zaks,  Beatrice Waldman Zaks, Henoch Zaks, Abraham G Zaks and

Gittel Layosh Zaks ("Defendants") on three adjacent properties known as 24 Highview Road, 82

Highview Road, and 105 Carlton Road, Suffern New York 10901 (collectively, the "Property"),

stemming from the Defendants placing unlawful and fraudulent mortgages on the Property,

FILED: ROCKLAND COUNTY CLERK 06/21/2025 04:46 PM   INDEX NO. 036178/2019
NYSCEF DOC. NO. 68                                  RECEIVED NYSCEF: 06/21/2021

which is owned by 82 Highview LLC, of which Yeshiva, a not-for-profit religious corporation, is the sole member and occupies the Property, and the Defendants thereafter using the mortgaged funds to acquire property for themselves.

2.     Because of the Defendants' ongoing fraudulent activity relating to the Property, Plaintiffs seek to permanently enjoin the Defendants from encumbering, selling, or otherwise transferring the Property in the future, or having any access to the Property in any way, without the proper approvals of the board and membership of Yeshiva, as required by law, and without the approvals required under the Not-For-Profit Corporation Law and the Religious Corporation Law it also seeks a determination as to the identities of the governance of Yeshiva.

## PARTIES

3.     Yeshiva is a not-for-profit religious corporation, with its principal place of business in Rockland County, New York.

4.     Plaintiff Rabbi Mayer Zaks ("Rabbi Mayer") is a natural person and resides in Rockland County, New York.

5.     Plaintiff Sima Weintraub is a natural person and resides in Rockland County, New York.

6.     Plaintiff Solomon Stein is a natural person and resides in Rockland County, New York.

7.     Plaintiff Ronald Smith is a natural person and resides in Rockland County, New York.

8.     Plaintiffs make up at least 5% of the membership of Yeshiva.

9.     Plaintiff 82 Highview LLC ("Highview LLC") is a domestic limited liability company with its principal place of business in Rockland County, New York.

FILED: ROCKLAND COUNTY CLERK 06/21/2021 04:46 PM
NYSCEF DOC. NO. 68

INDEX NO. 036178/2019
RECEIVED NYSCEF: 06/21/2021

10.     Nominal Defendant Yeshiva Chofetz Chaim Inc. is a not-for-profit religious corporation, with its principal place of business in Rockland County, New York.

11.     Upon information and belief, Defendant Arnav Industries Inc. Profit Sharing Plan and Trust ("Arnav") is a trust with its principal place of business in New York County, New York.

12.     Defendant Aryeh Zaks ("Rabbi Aryeh") is a natural person who, upon information and belief, resides in Rockland County, New York.

13.     Defendant Beatrice Waldman Zaks ("Beatrice") is a natural person who, upon information and belief, resides in Rockland County, New York.

14.     Defendant Henoch Zaks ("Henoch") is a natural person who, upon information and belief, resides in Rockland County, New York.

15.     Defendant Abraham G. Zaks ("Abraham") is a natural person who, upon information and belief, resides in Rockland County, New York.

16.     Defendant Gittel Layosh Zaks ("Gittel") is a natural person who, upon information and belief, resides in Jerusalem, Israel.

17.     Plaintiffs have demanded that Yeshiva bring this action, however, Yeshiva has not done so, necessitating bringing this lawsuit as a derivative action.


## JURISDICTION AND VENUE

18.     Jurisdiction and venue are proper in this Court because the events giving rise to the claims in this action occurred in Rockland County, New York, Yeshiva's principal place of business is in Rockland County, New York, most of the individual parties reside in Rockland

FILED: ROCKLAND COUNTY CLERK 06/21/2025 04:46 PM
INDEX NO. 036178/2019
NYSCEF DOC. NO. 68                                      RECEIVED NYSCEF: 06/21/2021

County, New York, many of the entity parties have their principal place of business in Rockland County, New York, and the Property is located in Rockland County, New York.

## INTRODUCTION

19. This action is commenced because of the wholly improper actions of Rabbi Aryeh and those acting in concert with him, including the other Defendants.

20. Rabbi Aryeh, and other family members acting in concert with him, unilaterally and without following the proper procedures prescribed for a not-for-profit religious organization generally, or Yeshiva specifically, placed unauthorized mortgages on Yeshiva's only asset, the Property, misused the mortgages as security for the Zaks' family entity purchasing other property, replaced the Yeshiva's officers and directors without authorization and is currently threatening to foreclose on other current debts on the Property.

21. Upon information and belief, Rabbi Aryeh and Henoch provided fraudulent documentation to obtain these mortgages, including fake leases and rent-rolls relating to the Property, despite knowing it was untrue and would be relied upon by the lender. Rabbi Aryeh's actions, and those acting in concert with him, were completely unauthorized and taken without Yeshiva's approval. The unauthorized transactions entered into and done by the Defendants must be reversed and/or Yeshiva made whole.

## FACTS

22. Plaintiff Rabbi Mayer is the president and a trustee of Yeshiva, a corporation organized under the New York Religious Corporation Law, formed for the purpose of promoting the religious, intellectual, moral and social welfare among its members, students and families, those of the Orthodox Jewish faith.

4

FILED: ROCKLAND COUNTY CLERK 06/21/2025 04:46 PM          INDEX NO. 036178/2019
NYSCEF DOC. NO. 68                                              RECEIVED NYSCEF: 06/21/2021

23.     To this end, another purpose of Yeshiva is to maintain and conduct a "Yeshiva," or parochial school on its Property, where it conducts religious services, classes and lectures to promote the teachings, customs, worship and traditions of Orthodox Judaism. Rabbi Mayer is the dean of the Yeshiva.

### The Unauthorized Replacement of Yeshiva Officers

24.     Unbeknownst to Plaintiffs and to other members of the Yeshiva, Defendants caused a Corporate Resolution to be issued on October 27, 2016 (the "purported Corporate Resolution") which stated that new officers were appointed and which stated that all former officers and trustees were removed as signatories.  A copy of the purported Corporate Resolution is attached hereto as **Exhibit 1**.

25.     Plaintiffs did not become aware of the purported Corporate Resolution until August 7, 2020, when Rabbi Aryeh included it as an exhibit to his Reply Affirmation in the case under Index Number 033156/2020, Supreme Court, Rockland County. *See* Document # 38 thereof. The trustees who were purportedly replaced were Rabbi Mayer, Sima Weintraub Zaks, Ronald Smith, Rabbi Aryeh and Beatrice.

26.     The purported Corporate Resolution stated that the new officers and trustees were appointed at a meeting which occurred in September 1, 2016.

27.     Upon information and belief, no such meeting ever occurred.

28.     The Yeshiva's purported Bylaws state that the Yeshiva's annual meeting will occur on September 1.  A copy of the purported Bylaws is attached hereto as **Exhibit 2**.

29.     Upon information and belief, the purported Bylaws were never utilized by the Congregation.

FILED: ROCKLAND COUNTY CLERK 06/21/2025 04:46 PM

NYSCEF DOC. NO. 68

INDEX NO. 036178/2019

RECEIVED NYSCEF: 06/21/2021

30.    It was not the Yeshiva's practice to hold annual meetings,

31.    Since at least 1980, there has not been an annual meeting held on September 1.

32.    The Yeshiva's members were not given notice of any September 1, 2016 meeting.

33.    The officers and directors who were purportedly replaced were not given notice of any September 1, 2016 meeting.

34.    The Yeshiva's purported Bylaws do not set a time for the annual meeting.  Ex. 2.

35.    The Yeshiva's purported Bylaws therefore do not serve as notice to its members of a specific meeting because there is no specific time set.

36.    Notice was therefore required to be sent to the Yeshiva's members prior to the alleged September 1, 2016 meeting.

37.    Either the September 1, 2016 meeting never occurred or the September 1, 2016 or the September 1, 2016 meeting occurred cloaked in a veil of secrecy in which members were not given notice of the meeting.  In either case, there was no proper meeting during which the officers and directors could have been stripped of their positions and that those positions had been turned over to Aryeh Zaks' family.

38.    On August 30, 2016, one day prior to the purported meeting referenced in the above Resolution, Rabbi Mayer and Rabbi Aryeh both signed an Arbitration Agreement ("The Arbitration Agreement") placing all of their issues including the governance of Yeshiva before a Bais Din.   A copy of the August 30, 2016 Arbitration Agreement is annexed hereto as **Exhibit 3**.

FILED: ROCKLAND COUNTY CLERK 06/21/2021 04:46 PM
NYSCEF DOC. NO. 68

INDEX NO. 036178/2019
RECEIVED NYSCEF: 06/21/2021

39.     The Arbitration Agreement specifically references 82 Highview Road and Yeshiva Chofetz Chaim schools and real property as being included in the subject matter of said Bais Din.

40.     The proximity in date of the Arbitration Agreement to the purported September 1, 2016 meeting is evidence that either the September 1, 2016 meeting never occurred or that Rabbi Aryeh signed the agreement with the intent to mislead and defraud Rabbi Mayer.

<u>The Unauthorized Encumbrance of the Property</u>

41.     Highview LLC took ownership and title to the Property on or about December 31, 2018, when it was transferred from Del Realty LLC to Highview LLC for the sole benefit of Yeshiva, the sole member of Highview LLC.

42.     Yeshiva occupies the Property, which was developed as and is used as a religious and educational campus.

43.     On December 31, 2018, the Property was owned by Highview LLC free and clear of any liens or encumbrances.

44.     Soon thereafter, Rabbi Aryeh, Henoch and Beatrice, falsely claiming they had the right to do so on behalf of Yeshiva, took steps to encumber the Property.

**First Arnav Mortgage**

45.     On or about April 10, 2019, a Mortgage dated March 5, 2019, signed by Beatrice, was recorded in the amount of $3,750,000.00 (Three Million Seven Hundred and Fifty Thousand Dollars) in favor of Arnav ("First Arnav Mortgage").

46.     Neither Rabbi Aryeh, Henoch, nor Beatrice were authorized by Yeshiva or Highview LLC to obtain a loan or to mortgage the Property.

FILED: ROCKLAND COUNTY CLERK 06/23/2021 04:46 PM INDEX NO. 036178/2019
NYSCEF DOC. NO. 68                                                    RECEIVED NYSCEF: 06/21/2021

47.      Rabbi Aryeh and Henoch orchestrated Beatrice's actions in signing the First Arnav Mortgage, and Beatrice acted directly at the direction of Rabbi Aryeh and Henoch.

48.      Defendants hid their actions in obtaining the First Arnav Mortgage so that Rabbi Mayer and the other actual Trustees of the Yeshiva would not be aware of it.

49.      Neither Yeshiva nor Highview LLC authorized or approved obtaining a loan or giving the First Arnav Mortgage.

50.      There was no approval of the First Arnav Mortgage by the Attorney General as required by New York's Religious Corporation Law and Not-For-Profit Corporation Law.

51.      Rabbi Aryeh and those acting in concert with him have not accounted to Yeshiva or Highview LLC for use the funds that were secured by the First Arnav Mortgage.

52.      In connection with the First Arnav Mortgage, an Assignment of Leases and Rents was recorded in favor of Arnav on April 10, 2019 ("First Assignment of Leases").

53.      Beatrice signed the First Assignment of Leases on behalf of Highview LLC, as a purported authorized signatory, without authorization from Yeshiva or Highview LLC.

54.      Rabbi Aryeh and Henoch orchestrated Beatrice's actions in assigning the leases and rents and Beatrice acted directly at the direction of Rabbi Aryeh and Henoch.

55.      At the time of the First Assignment of Leases, there were no existing leases or rents on the Property.

56.   Rabbi Aryeh and Henoch knew the leases and rent-rolls were fabricated and would be relied upon by the lender.

**Second Arnav Mortgage**

FILED: ROCKLAND COUNTY CLERK 06/21/2021 04:46 PM
NYSCEF DOC. NO. 68

INDEX NO. 036178/2019
RECEIVED NYSCEF: 06/21/2021

57.    On or about September 10, 2019, a Mortgage dated August 15, 2019, signed by Beatrice, was recorded in the amount $1,500,000.00 (One Million Five Hundred Thousand Dollars) in favor of Arnav ("Second Arnav Mortgage").

58.    Beatrice signed the Second Arnav Mortgage at the direct behest of Rabbi Aryeh and Henoch, and without authority or approval from Yeshiva or Highview LLC.

59.    The defendants hid their actions in obtaining the Second First Arnav Mortgage so that Rabbi Mayer and the other actual Trustees of the Yeshiva would not be aware of it.

60.    Neither Yeshiva nor Highview LLC authorized or approved obtaining a loan or giving the Second Arnav Mortgage.

61.    Rabbi Aryeh and those acting in concert with him have not accounted to Yeshiva or Highview LLC for use the funds that were secured by the Second Arnav Mortgage.

62.    There was no approval of the Second Arnav Mortgage by the Attorney General as required by New York's Religious Corporation Law and Not-For-Profit Corporation Law.

63.    In connection with the Second Arnav Mortgage, an Assignment of Leases and Rents was recorded in favor of Arnav on September 10, 2019, ("Second Assignment of Leases").

64.    Beatrice signed the Second Assignment of Leases at the behest of Rabbi Aryeh and Henoch and without the authority from Highview LLC or Yeshiva.

65.    At the time the Second Assignment of Leases was recorded, there were no existing leases or rents on the Property.

66.    Rabbi Aryeh and Henoch knew the leases and rent-rolls were fabricated and would be relied upon by the lender.

**Diversion of the Arnav funds that were secured by the Highview LLC/Yeshiva property to an Aryeh Zaks entity**

FILED: ROCKLAND COUNTY CLERK 06/21/2025 04:46 PM
NYSCEF DOC. NO. 68

INDEX NO. 036178/2019
RECEIVED NYSCEF: 06/21/2021

67. The loan funds secured by the First and Second Arnav mortgages against the Highview LLC/Yeshiva property totaled $5.25 million.

68. Upon information and belief, Aryeh Zaks used those funds to obtain for Rabbi Aryeh's entity, Shem Olam, LLC/Chofetz Chaim Inc., the assignment of a $24 million note by payment of approximately $6 million, which note was secured by a mortgage on property owned by Mosdos Chofetz Chaim ("Mosdos") located at 1-11 Kiryas Radin Drive (the "Mosdos Property").

69. Rabbis Aryeh and Mayer are fiduciaries of both Mosdos and Yeshiva.

70. Rabbi Mayer, as a fiduciary of Mosdos, believed that the assignment benefited Mosdos by releasing the Mosdos Property from the mortgage.

71. Rabbi Aryeh knowingly and falsely told Rabbi Mayer that the assignment of the note would be made to Mosdos to satisfy the mortgage on the Mosdos Property.

72. When he made the misrepresentation, Rabbi Aryeh knew that the note would not be assigned to Mosdos, and would be assigned to one of Rabbi Aryeh's own entities.

73. At the time he made the misrepresentation, Rabbi Aryeh knew that Rabbi Mayer did not know of the First and Second Arnav loan and mortgages against the Highview LLC/Yeshiva Property.

74. Rabbi Aryeh fraudulently concealed from Rabbi Mayer the existence of the Arnav loans and mortgages, and concealed his intent to use the loan funds to obtain for Shem Olam, LLC/Chofetz Chaim Inc, the assignment of the note secured by the mortgage on the Mosdos Property.

FILED: ROCKLAND COUNTY CLERK 06/21/2025 04:46 PM   INDEX NO. 036178/2019

NYSCEF DOC. NO. 68                                    RECEIVED NYSCEF: 06/21/2021

75.    Rabbi Aryeh had a fiduciary obligation to disclose to Yeshiva the Arnav loans and mortgages, the use of the Arnav loan funds, and the assignment of the note to Shem Olam, LLC/Chofetz Chaim Inc.

76.    Rabbi Aryeh made the misrepresentation with the intent that Rabbi Mayer would rely on it.

77.    Rabbi Mayer reasonably relied on Rabbi Aryeh's misrepresentation.

78.    In reliance on the misrepresentation, Rabbi Mayer did not seek to confirm the proper assignment of the note.

79.    As a result of Rabbi Aryeh's fraudulent concealment of the Arnav notes and mortgages, and his fraudulent concealment of the assignment of the note to Shem Olam, LLC/Chofetz Chaim Inc, the funds secured by the Highview LLC/Yeshiva Property were wrongfully diverted and used for the sole benefit of Rabbi Aryeh.

80.    Because the note was paid for by funds belonging to Highview LLC/Yeshiva, the note rightfully and in equity belonged to Highview LLC/Yeshiva.

### Justice Court ruling that Yeshiva and Mosdos are inextricably intertwined

81.    Mosdos is intricately related to Yeshiva as one of the Chofetz Chaim entities for which Rabbis Mayer and Aryeh Zaks serve as rabbis, trustees, and administrators.

82.    By Decision and Order of the Justice Court of the Town of Ramapo, Docket No. 11060149, dated April 4, 2019, the Justice Court ordered the eviction of Mosdos and Yeshiva as occupants of the Colton Elementary School owned by the Ramapo Central School District.

FILED: ROCKLAND COUNTY CLERK 06/21/2025 04:46 PM
NYSCEF DOC. NO. 68

INDEX NO. 036178/2019
RECEIVED NYSCEF: 06/21/2021

83.     In 2019, the Justice Court by Judge Richard Clarino found, after trial and multiple appeals, that Yeshiva and Mosdos "were and continue to be closely related in both identity, purpose and interest that they should be treated as one and the same." (**Exhibit** 4)

84.     The Justice Court's finding was based on, *inter alia*: Rabbi Aryeh, Rabbi Mayer, and Mayer's wife Sima (executive director of Yeshiva) were founding members of Mosdos; Sima and Rabbis Mayer and Aryeh are trustees of Mosdos; Rabbis Aryeh and Mayer are trustees of Yeshiva and Mosdos, and were founding members of Yeshiva; the certificates of incorporation of both Yeshiva and Mosdos list the same address in their certificates of incorporation.

85.     The Justice Court findings constitute res judicata and/or collateral estoppel against both Mosdos and Yeshiva.

### Conflicts of Interest and Related Party Transactions

86.     Abraham, Gittel and Henoch were not elected at proper a meeting with notice to members of the Yeshiva.

87.     But if they were proper trustees, they would be bound by New York Not for Profit Law's regulations regarding conflicts of interest and related party transactions.

88.     Defendants transferred assets of Yeshiva and Mosdos to themselves without taking the steps required by New York Not for Profit Law.

FILED: ROCKLAND COUNTY CLERK 06/21/2025 04:46 PM

NYSCEF DOC. NO. 68

INDEX NO. 036178/2019

RECEIVED NYSCEF: 06/21/2021

## AS AND FOR A FIRST CAUSE OF ACTION
### Breach of Fiduciary Duty
on Behalf of Yeshiva and Highview LLC

89.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 89 with the same force and effect as if set forth at length.

90.     Rabbi Aryeh is a trustee of Yeshiva and is an assistant rabbi and administrators.

91.     Beatrice is a trustee of Yeshiva.

92.     Henoch purports to be a trustee of Yeshiva.

93.     Yeshiva is the sole member of Highview LLC.

94.     By virtue of their purported positions with Yeshiva and Highview LLC, Rabbi Aryeh, Beatrice, Abraham, Gittel and Henoch had a confidential relationship with Yeshiva and owed fiduciary duties to Yeshiva and Highview LLC.

95.     Provided that they were actually trustees, Aryeh, Beatrice, Abraham, Gittel and Henoch's fiduciary duties included obligations to exercise good judgement, to act prudently relating to Yeshiva, to maximize benefits and minimize risks for Yeshiva and to always act in the best interest of Yeshiva.

96.     As described above, Rabbi Aryeh, Beatrice, Abraham, Gittel and Henoch breached the fiduciary duties they owed to Yeshiva and Highview LLC on numerous actions, by acting unilaterally, in their own self-interest and against the interests of Yeshiva and Highview LLC, without authorization from Yeshiva's trustees and membership.

97.     Rabbi Aryeh, Beatrice Abraham, Gittel and Henoch acted in a manner wholly inconsistent with the agency and trust Yeshiva and Highview LLC had in them, and failed to exercise the utmost good faith and loyalty required of them in the performance of their duties.

FILED: ROCKLAND COUNTY CLERK 06/21/2021 04:46 PM
NYSCEF DOC. NO. 68

INDEX NO. 036178/2019
RECEIVED NYSCEF: 06/21/2021

98.     Rabbi Aryeh, Beatrice, Abraham, Gittel and Henoch's multiple breaches have extensively harmed Yeshiva.

99.     Defendants Rabbi Aryeh Zaks, Beatrice, Abraham, Gittel and Henochs's conduct was unreasonable as it was not in line with industry norms, was so outrageous and wanton as to evince a high degree of moral turpitude, and was so reckless as to imply a deliberate indifference to civil obligations.

100.    As a result of the defendants' breaches of their fiduciary duties, Yeshiva has been damaged by diversion and misuse of its assets.

101.    By reason of the foregoing, Defendants Rabbi Aryeh Zaks, Beatrice Abraham, Gittel and Henoch are liable to Plaintiffs for actual damages in an amount to be determined at trial, which amount is not less than $10,500,000.00 (Ten Million Five Hundred Thousand Dollars), plus punitive damages, interest, costs and the expenses of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### Fraudulent Concealment
### on Behalf of Yeshiva and Highview LLC

102.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 101 with the same force and effect as if set forth at length.

103.    Rabbi Aryeh fraudulently concealed the Arnav loans and mortgages and the diversion of the Arnav funds to pay for the assignment of the note to Shem Olam, LLC, as alleged.

104.    As a fiduciary of Yeshiva and Mosdos, Rabbi Aryeh was obliged to reveal to Rabbi Mayer, as co-fiduciary of Yeshiva and Mosdos, the existence of the unauthorized loans and mortgages, and the diverted assignment.

105. By reason of the foregoing, the note diverted to Shem Olam, LLC/Chofetz Chaim Inc., rightfully belongs to Highview LLC/Yeshiva, and should be assigned to Highview LLC/Yeshiva.

## AS AND FOR A THIRD CAUSE OF ACTION
### Declaration of a Constructive Trust
### on Behalf of Yeshiva

106. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 105, with the same force and effect as if set forth at length.

107. Defendants are fiduciaries of Yeshiva.

108. Defendants have a confidential relationship with Yeshiva.

109. Defendants are fiduciaries of Mosdos.

110. Defendants have a confidential relationship with Mosdos.

111. By reason of their confidential and fiduciary relationship to Yeshiva, defendants impliedly promised that they would not enrich themselves at Yeshiva's expense by self-dealing and diverting Yeshiva's assets to themselves.

112. By reason of their confidential and fiduciary relationship to Mosdos, defendants impliedly promised that they would not conceal multi-million-dollar transactions from Rabbi Mayer, as a fiduciary of both Yeshiva and Mosdos, and would not enrich themselves at Mosdos' and Yeshiva's expense by self-dealing and diverting Yeshiva's and Mosdos' assets to themselves.

113. Plaintiffs relied on defendants' implied promise, and did not take steps to prevent these transactions from occurring.

114. The defendants were, therefore, able to secretly transfer assets of Yeshiva and Mosdos to themselves.

115.     The defendants have been unjustly enriched at the expense of Yeshiva and Mosdos.

116.     By reason of the foregoing, plaintiff is entitled to the imposition of a constructive trust on the $12.8 million note wrongfully assigned to Shem Olam, LLC.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Violation of N.Y. Not-for-Profit Corp. Law)

117.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 116 with the same force and effect as if set forth at length.

118.     Defendants' related party transactions violated N.Y. Not-for-Profit Corp. Law § 715.

119.     As a result, Plaintiffs have suffered damages in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Violation of N.Y. Not-for-Profit Corp. Law)

120.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 119 with the same force and effect as if set forth at length.

121.     Defendants' related party transactions violated N.Y. Not-for-Profit Corp. Law § 715.

122.     As a result, Plaintiffs are entitled to injunctive relief voiding the purported September 1, 2016 election of officers and trustees.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Declaratory Judgment)

123.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 122 with the same force and effect as if set forth at length.

FILED: ROCKLAND COUNTY CLERK 06/03/2025 04:46 PM
INDEX NO. 036178/2019
NYSCEF DOC. NO. 68
RECEIVED NYSCEF: 06/21/2021

124.     By reason of the foregoing, Plaintiffs are entitled to an order and judgment of this Court declaring that the purported election of trustees and officers on September 1, 2016 is null and void and ordering the Defendants to undertake remedial measures.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Declaratory Judgment)

125.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 124 with the same force and effect as if set forth at length

126.     By reason of the foregoing, Plaintiffs are entitled to an order and judgment of this Court declaring that the purported Corporate Resolution regarding the purported meeting on September 1, 2016 is null and void and ordering the Defendants to undertake remedial measures.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### Permanent Injunction Against All Defendants

127.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 126 with the same force and effect as if set forth at length.

128.     The Defendants' fraudulent actions demonstrate that the Property is at risk of being further encumbered or sold, without Yeshiva's approval, harming the operations of Yeshiva.

129.     In a July 14, 2020 Declaration filed in the United States Bankruptcy Court in the Adversary Proceeding under Docket Number 20-08949, Henoch Zaks stated under penalty of perjury that Yeshiva is "indebted to Congregation Chofetz Chaim in the approximate amount of $9,300,000 for obligations of the Yeshiva that were paid by the Congregation".

FILED: ROCKLAND COUNTY CLERK 06/21/2021 04:46 PM          INDEX NO. 036178/2019
NYSCEF DOC. NO. 68                                        RECEIVED NYSCEF: 06/21/2021

130.     The term "Congregation Chofetz Chaim" is not defined anywhere in Henoch's Declaration.   Plaintiffs believe it refers to Chofetz Chaim Inc., a for profit entity that the defendants deceptively created to be confused with Yeshiva.

131.     In his July 20, 2020 affirmation filed in this court in the action under Index Number 33156/2020 Henoch Zacks alleged under the penalty of perjury that the debts of Yeshiva had ballooned to $12 million dollars.

132.     Plaintiffs have no adequate remedy at law to prevent defendants from continuing to violate Yeshiva's rights, without approval of Yeshiva's trustees or the approvals required under New York's Not-For-Profit Corporation Law and Religious Corporation Law.

133.     The equities are balanced in Plaintiffs' favor.

134.     Yeshiva has no adequate remedy at law to prevent further damage to its property rights.

135.     By reason of the foregoing, Plaintiffs are entitled to a permanent injunction against Defendants, and those acting on their behalf, enjoining Defendants from encumbering, selling, or otherwise transferring the Property in the future, without the proper approvals of the board and membership of Yeshiva, as required by law, and without the approval required under the Not-For-Profit Corporation Law and the Religious Corporation Law.


**WHEREFORE,** Plaintiffs demands judgment against each of the Defendants as follows:

1.   On the First Cause of Action, for Breach of Fiduciary Duty, on behalf of Yeshiva Chofetz Chaim Inc., and Highview LLC;

2.   On the Second Cause of Action for Fraudulent Concealment, on behalf of Yeshiva Chofetz Chaim Inc., and Highview LLC;

FILED: ROCKLAND COUNTY CLERK 06/21/2025 04:46 PM    INDEX NO. 036178/2019
NYSCEF DOC. NO. 68                                  RECEIVED NYSCEF: 06/21/2021

3.  On the Third Cause of Action, Declaration of a Constructive Trust on behalf of Yeshiva Chofetz Chaim Inc.;

4.  On the Fourth Cause of Action, damages in an amount to be determined at trial;

5.  On the Fifth Cause of Action, injunctive relief voiding the purported September 1, 2016 election of officers and trustees;

6.  On the Sixth Cause of Action, an order and judgment declaring that the purported election of trustees and officers on September 1, 2016 is null and void and ordering the Defendants to undertake remedial measures;

7.  On the Seventh Cause of Action, an order and judgment declaring that the purported Corporate Resolution regarding the purported meeting on September 1, 2016 is null and void and ordering the Defendants to undertake remedial measures;

8.  On the Eighth Cause of Action, a permanent injunction enjoining Defendants from encumbering, selling, or otherwise transferring the Property in the future, without the proper approvals of the board and membership of Yeshiva, as required by law, and without the approval required under the Not-For-Profit Corporation Law and the Religious Corporation Law, and

9.  For such other and further relief as the Court may deem just and proper.

Dated: Nanuet, New York
       June 15, 2021

                              SAVAD CHURGIN
                              *Attorneys for Plaintiffs*

                    By:    JOSEPH A. CHURGIN, ESQ.
                           Savad Churgin
                           55 Old Turnpike Road, Suite 209
                           Nanuet, New York 10954
                           (845) 624-3820
                           j.churgin@savadchurgin.com

VERIFICATION

STATE OF NEW YORK )

COUNTY OF ROCKLAND)

Rabbi Mayer Zaks duly affirms  I am one of the plaintiffs herein; I have read the

annexed Second Verified Amended Complaint and know the contents thereof, and the

same are true to my knowledge, except those matters therein which are stated to be

alleged on information and belief, and as to those matters I believe them to be true   I

affirm pursuant to my religious beliefs.

_____
RABBI MAYER ZAKS

Affirmed to before me this
___ day of June, 2021

_____
Notary Public

HIRSCH ROSENZWEIG
Notary Public, State of New York
Reg. No. 01RO6398357
Qualified in Rockland County
Commission Expires 08-30-20__